Good morning. May it please the Court, Denise Fee, on behalf of Intervenor Appellant Alliance in this consolidated appeal, I would like to reserve a few minutes of my time for rebuttal. All right. Watch your clock. At issue today is whether this Court will enlarge the narrow range of judicial records traditionally kept secret or expand the exception carved out for private discovery materials to include Rule 706 witness proceedings. The answer to that question should be no for at least three reasons. First, this Court recognizes a strong presumption favoring public access that applies to most judicial records. Second, neither Rule 706 as a general matter nor the content of these particular proceedings overcomes the default posture of public access. And third, it is fundamentally unfair to deny Alliance access to court filings that are directly relevant to its ongoing defense of collateral litigation pending before the same district court filed by the same plaintiff's counsel, asserting the same RICO theory and relying on the same expert witness to prove causation and damages who is the subject of the Rule 706 appointment. Ninth Circuit precedent is clear in recognizing a Federal common law right to expect to inspect and copy public records and documents, including judicial records and documents. Judge Fletcher wrote in Fultz, quote, this right extends to pretrial documents filed in civil cases, including materials submitted in connection with motions for summary judgment. Counsel, can you clarify something for me? How did the district court obtain the Bodie report? And we're only talking about this three-page report, is that right? No, that's incorrect, Your Honor. We're talking about six categories of documents. The Bodie report, to answer your first question, was emailed to Judge Snyder by Dr. Bodie. Okay. And did she retain him? Was he paid? Yes, Your Honor. And he was paid out of what funds? The cost was shared, my understanding, by defense counsel and plaintiff's counsel. And did the district court go to the parties and say, look, I've got a battle of experts here, I want to get my own expert? Yes, Your Honor. And who decided to go to Mr. Bodie? My understanding is that each side submitted candidate names and then Judge Snyder selected Dr. Bodie. And whether there was a disagreement among the parties about that selection, I'm not certain. But the what happened was the defendants had filed motions for summary judgment, and in opposition to those motions for summary judgment, the plaintiffs in each of the two cases below filed declarations by their own expert witness in support of their oppositions. And then the defendants filed motions to exclude those declarations as not satisfying the Daubert standard. The district court then said that to decide the summary judgment motions and to decide the motions to exclude the declarations that were filed in opposition to summary judgment, she needed the assistance of an independent expert. And that independent expert was appointed under Rule 706. And paid for by the parties. And paid for by the parties. Now, the Ninth Circuit precedent is clear in recognizing the common law right to inspect and copy public records. And Judge ‑‑ I'm sorry, as I started to say, Judge Fletcher wrote in Fultz that this right extends to pretrial documents filed in civil cases, including materials submitted in connection with motions for summary judgment. And in Kamakana, the court held, unless a particular court record is one traditionally kept secret, a strong presumption in favor of access is the starting point for analyzing that right. I guess the thing ‑‑ you have the report. We all have the report, right? Yes, Your Honor. Everybody has the report. We have the report. Council for Midland and F&G provided Council for Allianz a copy of the report, which is an initial three‑page sort of summary of Dr. Bode's initial findings. But you want all the underlying documents as well? We have none of the underlying documents. That's the purpose of this appeal? Yes. Yes, Your Honor. In our motion, we identified six categories of pleadings that, frankly, occupied the entirety of the two underlying cases for two years. The exploration of their expert's opinion as analyzed by the Rule 706 expert. And so there are dozens, dozens of documents that were placed under seal. And based on the docket entry descriptions, pardon me, we identified what those documents are. And Judge Schneider indicated that Allianz's motion to intervene was not unnecessary, even though we had the initial three‑page report, because we did not have the other five categories of materials that relate to it. You know, you intend to use this in other litigation? Yes, Your Honor. The Rule 706 expert was selected to evaluate declarations that were filed by an expert witness who was appointed by the plaintiffs, who was the same expert witness who's been appointed by the same plaintiffs' counsel in a case that Allianz is defending. And so Allianz has, although Allianz was not permitted to participate in the Rule 706 proceedings that occurred in the Midland and F&G cases. So the ‑‑ so, yes, we feel that the ‑‑ without knowing what's in these documents, that they are directly relevant to our defense of, in a collateral case that involves the same parties and that utilizes the same expert witness to prove two essential elements of their RICO claim, causation and damages. And as I said, Dr. Bode was selected by the court to evaluate those two essential elements of plaintiffs' claims in the context of the defendant's summary judgment motions, including Allianz's summary judgment motion, which plaintiffs responded to by submitting declarations from their expert witness. And Dr. Bode was appointed to evaluate the soundness and the validity of their experts' opinions with respect to RICO causation and damages. Now, contrary to the burden shifting that was imposed by the district court, it was not Allianz's burden to articulate reasons for unsealing the records, an approach this court called upside down. As the proponent of sealing, it was, and it remains, plaintiffs' burden to overcome the strong presumption by meeting the compelling reasons standard. They must articulate compelling reasons supported by specific facts that outweigh the general history of access and public policies favoring disclosure. The compelling reasons standard applies to most judicial records, but there was no showing by plaintiffs and no finding by the district court that the Rule 706 pleadings and related filings, and again we're talking dozens that occurred over a two-year period, are not within that large majority of judicial records to which the default posture of access applies. Now, you can obtain this information if you have to go about independently discovering in your case. Is that right? Well, I don't believe so, Your Honor. We attempted to do that. We filed a motion with Judge Schneider to appoint Dr. Bode as an independent expert in our case to sort of try to replicate what transpired in the other two cases, but that motion was denied. And although the district court indicated that assistance would be helpful in deciding the summary judgment motions and the motions to exclude the plaintiff's expert witness that was filed in opposition to summary judgment, those cases settled before those decisions were made. But the Allianz case continues. And so the validity and the criticisms of their principal witness, what Dr. or excuse me, what Judge Schneider called that the case rises and falls on the opinions of plaintiff's expert witness, continues without our having access to that information. And as I said, we tried to sort of get around it another way by having Dr. Bode appointed in our case to finish the task that was interrupted in the other cases because those cases settled. But the district court denied our motion to have Dr. Bode appointed in our case to that two-year period. Now, she the district court found that there were compelling reasons to keep them sealed in the footnote, footnote 5. Yes, Your Honor. But she didn't really articulate what they were. I mean, she says the footnote says for the compelling reasons stated, but the compelling reasons the purportedly compelling reasons that were stated is that Judge Schneider indicated that Dr. Bode was appointed for her personal use only, and therefore the information shouldn't be shared not only with Allianz, but with the public in general about an issue that Judge Schneider herself called fundamental and central to each of these cases, including to the Allianz case. She also found that the documents were an exception to the normal rule of the public access because they were connected to a nondispositive motion. And she viewed the Daubert motion as distinct from the summary judgment motion. She did, Your Honor, and I think that characterization is inaccurate for this reason. And I think a brief indication of the history of Dr. Bode's appointment is important. F&G, Midland, Allianz, and American Equity, the four cases that are pending before Judge Schneider, in each of those cases, the defendant filed a summary judgment motion. And in each of those four cases, the Plaintiff's counsel filed declarations by their expert, Dr. McCann, in support of their opposition to summary judgment. So at that point, then, the defendants filed motions to exclude those declarations from the Plaintiff's expert witness as not satisfying the Daubert standard. So the notion that the Daubert evaluation with respect to Dr. McCann's opinions as being, you know, tangential or peripheral somehow to the summary judgment rulings really, I think, belies what transpired and what precipitated the appointment, including Dr. ‑‑ excuse me, Judge Schneider's order appointing Dr. Bode says she's appointing him to assist her in deciding summary judgment and in deciding the motions to exclude. So this effort to create this artificial distinction between the dispositive and the nondispositive nature of these proceedings we think is incorrect. And also the notion that these documents that the Court itself called fundamental and central and that the cases will rise and fall on the analysis of Plaintiff's expert witness as somehow being tangential or peripheral to a nondispositive motion we think is just not a, you know, an accurate characterization of what transpired. And, in fact, Plaintiff's counsel themselves said to the Court that when the Court indicated her intention to appoint a Rule 706 expert, Plaintiff's counsel said that the 706 proceedings that would ensue are, quote, potentially case dispositive and could extinguish the claims of, quote, real live plaintiffs. So, you know, again, the notion that the plaintiffs are offering that this was somehow this marginal Dawbert analysis unrelated to summary judgment we think is just not a fair characterization. All right. Did you want to save some time? Yes, I would like to save some time if I may, Your Honor. Thank you. Good morning, and may it please the Court. Kevin Green for the Plaintiffs Appellees, and these were the class plaintiffs in the underlying cases that settled Midland and F&G. The typical ceiling-type case or the more common case that you see in the precedents is a – typically a criminal proceeding and immediate entity that wants access to sealed files. And this case is quite unusual. It's nothing like that. It does involve the appointment of a Rule 706 expert, which is highly unusual to begin with in district courts. Counsel, do you represent the plaintiffs in Allianz? Yes. In the Allianz lawsuit? Yes. All right. All right. Go on. This does involve a Rule 706 expert. So you think that takes it out of the normal presumption of public access? I think it's – But what is it about the appointment of a 706 expert that would do that? I think it's outside the presumption of public access for the reason articulated by Your Honor's question earlier, and that is that this case in particular is under Phillips v. General Motors, where the documents were already sealed at the time Allianz moved to intervene and said, we'd like to see them. Those documents were sealed in the fall of 2008 when Dr. Bode submitted his report, and Judge Snyder ordered those documents are going to be under seal because he's my expert, not for the parties in other cases. And in terms of explanations given for the sealing, I would just refer the Court to excerpts of record page 215, which is the October 2008 hearing where this is discussed. Doesn't it seem that if the Court is going to consider those documents, that that would be even more reason for them to be public because the basis for a court's decision shouldn't really be secretive? Judge Snyder did not consider Dr. Bode's report, and that's very critical here. Well, only because the parties settled. If they hadn't settled, she would have considered it in connection with the summary judgment, wouldn't she? I don't think even that much is clear, and that's a very important part of the record. Well, why did she appoint him to begin with? She appointed him as an independent expert to evaluate, among other things, theories of the plaintiff's expert. Which were submitted in connection with summary judgment, right? In connection, a nondispositive motion. That's important. Wait. In connection with the summary judgment motion. Summary judgment, yes. But the motion that it was in connection with was the Daubert motion to exclude. And that was nondispositive. I don't know how you can narrow it, make it relevant only to that. Because ultimately, if it was included, it would have affected the summary judgment, wouldn't it? It may have affected it. It's relevant. I wouldn't assume that it's irrelevant. But the standard under the Ninth Circuit case law, and counsel described it as an artificial distinction, it's Ninth Circuit law. It's comicana in the other cases. Nondispositive versus dispositive. And that line really goes out the window with no clear standard for district courts. If you look at a particular case and you say, it just feels like this is highly relevant. So we're going to apply a different standard. You think that's what I'm suggesting? I think it was part of, I think the Daubert, she was testing. She didn't know which expert to believe. So she hired her independent expert to help her figure out which expert was correct. This is a highly complicated area of, you know, the annuities and how they're, what they represent, what you're buying when you pay for an annuity. It's very highly complicated. So she obviously wanted an expert to help her figure out who was right. We had a battle of the experts. And ultimately to make a decision on summary judgment. I think that's fair to say. I don't disagree, Your Honor. Okay. But ultimately she did not consider his report. Those cases settled. And as counsel explained, Allianz moved to appoint Dr. Bode. And Allianz versus, Negrete versus Allianz, the other case, and Judge Snyder within her discretion declined to do that. So Dr. Bode is not a factor in the collateral litigation now. And I just want to emphasize that she didn't consider Dr. Bode, and she's been very clear about that throughout the record and in her order that's on review here. At page ER-164, it's not even clear that she elected to file his report. It was submitted to her via e-mail from the expert, Dr. Bode. And she says there, this is ER-164, if I'm going to file his report it's going to be under seal with a protective order. And she never considered it. She says later that I never ruled on whether it was admissible. And that's at ER page 215 where she tells defense counsel, we better decide if it's admissible in this case before it goes out on the broad wire. She never reached that determination because the plaintiffs moved to strike it on grounds that it was not admissible, and she never ruled on that because the case settled. And I think this is important because I don't want to belabor case law, but the U.S. Supreme Court has emphasized in Seattle Times versus Reinhart that restraints placed on discovered but not yet at information are not a restriction on a traditionally public source of information. And this was never admitted. And it was within her, I think, sound exercise of discretion in managing these cases to say I have the right to appoint this expert under Rule 706, and I'm going to do that. And she drew a firm line that said he's for my use only, paid for by the parties in the two settled cases and not for use by other parties in other cases. Simple as that. And she never considered it. She says elsewhere that I never read it. At one of the hearings in Negretti v. Allianz, this is at ER 93, and she is very clear throughout to Allianz and others involved, if I'm going to rely on him, you can see all that information. She's never done that. She says you assume that Bodie has had some influence on my thinking that he hasn't had an opportunity to provide because we never got to the point of having a Daubert hearing. I have never been required, thankfully, to sit down and evaluate what he said, review the depositions that were taken of the man and things of that nature. That's at ER 93. So Bodie has no role in what's going on in Negretti v. Allianz. She's totally blocked it out. And again, this case I think is under Phillips where the sealing occurred in 2008. Allianz is a defendant in Negretti v. Allianz since 2005, doesn't move to intervene in these cases until they're just about over in 2010, and says we want to see this information. At that point, the burden is on Allianz under Phillips v. General Motors. This is cited in the district court's order to demonstrate compelling reasons to unseal what has been legitimately sealed previously in the case. And I don't think Allianz here has shown the good cause or, as the court noted in its footnote in the order on review, compelling reasons either under unusual circumstances. It says independent experts are rare. As I understand it, she shifted the burden saying that they had to show good cause for the unsealing. Is that correct? She shifted the burden under the Phillips decision. Yes. Which states that the proponent of unsealing under those circumstances when a document has previously been sealed for legitimate reasons must show compelling reasons to unseal it. Yes. If you want to call that a shift. All right. Just a few more points I'd like to touch on here. Counsel referred to fundamental fairness as a basis for access to this information. And in Times Mirror v. U.S., 873 F. Second, 1210, this is a Ninth Circuit decision, and the court rejects the idea that the promotion of fairness is an incantation to open proceedings to the public. And we have very defined legal standards here under Ninth Circuit precedent, under Kamikana and the other cases. It says that this was a nondispositive motion, could be sealed for good cause, and it was, for the reasons stated at the October and November 2008 hearings. And then Allianz moves to intervene to unseal it and doesn't demonstrate compelling reasons to do so. And, again, I think all of this is discretionary. And I'll yield to counsel on one point, that when we're talking about whether the correct legal standards have been applied, that's a question of law, or maybe a mixed question of law and fact. But everything else going on here, I think, is within management of the proceedings and abuse of discretion. Unless the Court has any further questions you may have, that's all I have. All right. Thank you. Thank you. Thank you, Your Honor. I'll just try to take a moment to address several of Mr. Green's comments. As he indicated, appointment of a Rule 706 expert is an unusual step. And the notion that Judge Schneider would have taken that unusual step to pursue for two years a peripheral issue, it just, it defies credulity. Procedurally, at what point did Judge Schneider appoint her own expert? Was it following the oral argument on the summary judgment motion? It was during the oral argument on the summary judgment motion. Judge Schneider said that in order to decide summary judgment, in fact, her phrase was, I am not prepared to decide summary judgment without the assistance of a Rule 706 expert. And she announced her intention to do so. And then some six weeks later, she actually issued the order where the Rule 706 expert was actually appointed. And in that order, she reiterates that summary judgment was among the underpinnings for her reason to do so. And counsel makes, the opposing counsel makes a match of the fact that Allianz delayed for so long in intervening in this case, but accounted for the delay. The, well, I guess I would object to the word delay in that when these proceedings were taking place over the two years that the vetting, to use the Court's word, of Dr. McCann was taking place, we had assurances from Judge Schneider, including the serial stays of our case while this was going on in F&G and Midland, telling us that in due course, these materials would be provided to us. And then when the Court Sotomayor, where do you find that in the record? The due course comment, well, actually, there are several places I would point the record to. I think it's at ER 169 and 70. And then what's the exact word in there? If I may get the record. Yes. Okay. One, let me see who's speaking here. This is the Court. Inquiring minds want to know, I know. But the fact of the matter is, it's still a work in progress as far as I'm concerned. And then counsel for F&G and Midland says, I understand, Your Honor, I just wanted our position to be clear. And the position that was being expressed by counsel for F&G and Midland was to assure the Court that there was nothing proprietary or trade secret about the information that was being considered. So then the Court follows. I know. I know. You're under a good deal of pressure. I'm conversant with the others who stand in your shoes, and none of them is shy or shy in retiring, and I'm sure they want to have all the information you have available, and in due course they will. And in that context, she's talking about Allianz and she's talking about American Equity, the two other defendants in the cases before her. And in our brief, we also cite numerous other statements made by the Court indicating, you know, to Allianz the direct relevance of these proceedings that were occurring in F&G and Midland to the Allianz case, including using the phrase that the Allianz case will rise or fall on what happens with Dr. McCann in the F&G case, and in particular because the Allianz case was the only one of the four that was certified as a class, a certification order Judge Schneider called conditional, that Judge Schneider said that in particular what would be relevant to Allianz is whether the Allianz case has to be decertified based on what transpired with Dr. Bode's analysis of a plaintiff's expert witness. The last point, if I may make, is, and I see that my time has expired, is the issue of the settlement, that the question here, and under the cases Foltz and the other case, and St. Jose Mercury News, the standard, the difference between the nondispositive dispositive motion, it doesn't end the inquiry. Even if it's a dispositive motion, which makes the good cause standard apply, the good cause standard still must be satisfied, and it was not satisfied in this case. There were not individual findings with respect to the individual dozens and dozens of documents that were filed that reflect that there's a good cause for sealing those records. And the issue is not, as Plaintiff's counsel indicated, that the case was settled and therefore it somehow moot because those motions were not decided. The relevant question is, were the documents submitted in connection with summary judgment? Those were Judge Fletcher's words in Foltz. Not whether the underlying motion ultimately was decided, but whether the documents were filed, not resolved. All right. Counsel, you're well over your time. Thank you. Thank you very much. Thank you. In re Midland, National Life Insurance Company, will be submitted and will take up United States v. Harris.
judges: Fletcher, Wardlaw, Bybee